# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY E. D'ORAZIO, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-CV-0403 |
| | : | |
| HARTFORD INS. CO., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM AND ORDER

**Joyner, J.**                                                        **May 5, 2011**

Before this Court are Defendant's Motion for Summary Judgment (Doc. No. 24), Plaintiff's response in opposition thereto (Doc. No. 28), and Defendant's reply in further support thereof (Doc. No. 29). For the reasons set forth in this Memorandum, the Court grants Defendant's Motion.

## I. BACKGROUND

On November 17, 2007, Plaintiff was injured in a motor vehicle accident. At the time of the accident, she was covered by Defendant's insurance policy, which provided coverage for "personal injury protection [(PIP)] benefits . . . if incurred within 2 years from the date of the accident causing bodily injury." (The Hartford Personal Auto Insurance Policy: Delaware 8, Def.'s Mot. Ex. 1.) The PIP benefits consisted of (1) "[r]easonable and necessary" medical expenses and (2) "[l]oss of wages, salary or their equivalent, net of taxes, for work an insured would have performed had he not been injured." (Id.)

1

Plaintiff thus submitted to Defendant an application for PIP benefits in December 2007. (Def.'s Mot. Ex. 2.) On the application, Plaintiff described her injury as "[j]ust the normal body 'snap' upon impact. Aching neck + shoulders, back. Some numbness + pain in legs–intermittent headache." (Id.) Plaintiff indicated that she was unaware of the amount of medical bills to date and did not know if she would incur more medical expenses. (Id.) In response to a question about any lost wages, she reported that she had not lost any wages and had been looking for a new job at the time of the accident. (Id.)

**A. Plaintiff's medical expenses**

Plaintiff received medical treatment, including physical therapy and epidural injections, during the following months. It is undisputed that Defendant covered these medical expenses. (Pl.'s Dep. 73:13-18, Def.'s Mot. Ex. 7.)

On April 2, 2008, Plaintiff's treating physician, Frank Sarlo, M.D., noted that Plaintiff had "started her physical therapy; however, it really seems to flare her pain." (Def.'s Mot. Ex. 3.) On May 28, 2008, Dr. Sarlo noted that Plaintiff was "doing about the same." (Def.'s Mot. Ex. 4.) Plaintiff was "tolerating her work activities well while lying on the floor" but had "pretty significant pain after sitting for just short periods of time." (Id.) Plaintiff was "unwilling to return to physician [sic] therapy" because "[s]he seem[ed] to feel this

2

really made her pain a lot worse." (Id.) Dr. Sarlo opined that, "[a]t this stage, there is likely very little from an interventional spine perspective or physical therapeutic perspective that would likely help her at this point with her focal back pain." (Id.)[1]

On July 9, 2008, Peter Bandera, M.D., performed an independent medical examination on Plaintiff, at the request of Defendant. After reviewing Plaintiff's records and examining her, Dr. Bandera opined,

> It appears the treatment to date in terms of physical medical and rehabilitation [sic] have been appropriate. At this point she is taking intermittent pain medication and it would be appropriate to wean her off Tylenol with Codeine and exclusively rely on anti-inflammatory medication. There is a direct causal relationship between the above diagnosis and her injury of 11/17/07. No further therapy or diagnostic testing is felt necessary in light of essentially normal examination. Surgery would not be indicated.
> . . . It is felt that she can execute normal activity without restrictions.

(Def.'s Mot. Ex. 5.)

On July 25, 2008, Defendant sent Plaintiff's counsel a letter enclosing Dr. Bandera's report and stated that it would discontinue medical benefits based on the report, effective August 1, 2008. (Def.'s Mot. Ex. 6.) There is no evidence in

---

[1] Dr. Sarlo recommended that Plaintiff see an orthopedic reconstructive spine surgeon about a possible total disc replacement. (Def.'s Mot. Ex. 4.) It is undisputed that surgery was ultimately not recommended. (Def.'s Mot. Ex. 5; Pl.'s Resp. 4 & Ex. A.)

3

the record that Plaintiff responded in any way to Defendant's letter; nor are there bills or medical records from providers indicating that Plaintiff sought or received further treatment.

### B. Plaintiff's wage loss claim

On January 18, 2008, Plaintiff began a job as an architect with Bernardon, Harbere, Holloway, P.C. (Def.'s Mot. Ex. 8.) Around June of 2008, Plaintiff submitted a claim for wage loss benefits to Defendant, claiming that she had been unable to work between March 28, 2008, and April 25, 2008. (Id.) Defendant requested that Plaintiff provide a disability note from her treating physician to support her claim that she was medically unable to work during that time frame. (Def.'s Mot. Ex. 9.) There is no evidence in the record that Plaintiff ever responded to this request, and Defendant did not pay the wage loss claim.[2]

### C. Procedural history

Plaintiff filed suit in state court on December 10, 2008. Defendant removed the case to federal court, and Plaintiff filed an amended complaint seeking damages for an alleged breach of contract and bad faith in refusing to pay medical bills and the

---

[2] The policy provided that Defendant "ha[s] no duty to provide coverage under this policy unless there has been full compliance with the following duties: . . . B. A person seeking any coverage must: 1. Cooperate with us in the investigation, settlement or defense of any claim . . . ." (The Hartford Personal Auto Insurance Policy: Delaware 25, Def.'s Mot. Ex. 1.) A person seeking coverage must also "give [Defendant] written proof of claim" no more than "2 years after expenses are incurred." (Id. at 12.)

4

wage loss claim.[3] While Plaintiff's claims were originally based on alleged violations of Pennsylvania law and, in the alternative, Delaware law, this Court later ruled that Delaware law governs the action. (Mem. & Order of June 23, 2009, Docs. Nos. 15-16.)

After the close of discovery, Defendant filed the pending Motion for Summary Judgment. Defendant asserts that Plaintiff has not produced sufficient evidence to bear her burden of proving that Defendant breached the insurance contract, and that Defendant did so in bad faith, by failing to pay medical and wage loss benefits. (Def's. Br. 6.) Plaintiff's response contends that, at trial, she will "produce evidence sufficient to show that Hartford is under a duty to provide future medical benefits and to pay lost wages." (Pl.'s Resp. 2.)

## II. STANDARD OF REVIEW

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.

---

[3] Plaintiff's amended complaint included a request for punitive damages, but the parties later stipulated to withdrawal of the request. (Doc. No. 26.)

56(c)). "[T]he party moving for summary judgment has the initial burden of identifying evidence which it believes demonstrates the absence of a genuine issue of material fact." Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988). "However, where the nonmoving party bears the burden of proof, [the nonmoving party] must by affidavits or by the depositions and admissions on file 'make a showing sufficient to establish the existence of [every] element essential to that party's case.'" Id. (quoting Celotex, 477 U.S. at 322); see also Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) ("[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings." (footnote and citation omitted)).

### III. DISCUSSION

#### A. Breach of contract

Count I of Plaintiff's amended complaint, for "first party medical benefits and lost wages," alleges a breach of contract. (Doc. No. 8, at 5-6.)

Clearly, "[n]ot every refusal to pay a claim of insurance will constitute breach of contract by the insurer." Casson v. Nationwide Ins. Co., 455 A.2d 361, 365 (Del. Super. Ct. 1982).

> In order for an insured to establish the contractual liability of an insurer for an alleged breach of an insurance agreement, he must show that (1)

6

> there was a valid contract of insurance in force at the
> time of the loss, (2) the insured has complied with all
> conditions precedent to the insurer's obligation to
> make payment, and (3) the insurer has failed to make
> payment as required under the policy.

Id. Thus, "an insurer may assert substantial non-performance of any condition as a defense to any proceeding against it on a policy." Id.; see also Harper v. State Farm Mut. Auto. Ins. Co., 703 A.2d 136, 140 (Del. 1997) (holding that "[an] insured does not have a justiciable controversy for PIP benefits until a request for PIP payments has been denied by the PIP insurer"); Murphy v. United Servs. Auto Ass'n, No. 04C-07-003, 2005 Del. Super. LEXIS 159, at *9 (May 10, 2005) ("Delaware has consistently permitted insurers to investigate the reasonableness of expenses.").[4]

### 1. Medical expenses

Plaintiff's amended complaint, seeking coverage of past and future medical expenses, is much broader than that for which Plaintiff seems to be seeking coverage at this stage of the

---

[4] Under the Delaware No-Fault Act, an insurer must provide, as minimum coverage, "[c]ompensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident" for "[m]edical, hospital, dental, surgical, medicine, [and] x-ray . . . services" as well as "[n]et amount of lost earnings." 21 Del. C. § 2118(a)(2); see also Ramsey v. State Farm Mut. Ins. Co., 869 A.2d 327, 327 (Del. 2005) (recognizing that, in the wage-loss context, "the term 'reasonable' is deemed to refer to the amount of lost earnings, while 'necessary' must be interpreted to mean those lost earnings which are 'unavoidable' or 'inescapable'" (quoting Casson v. Nationwide Ins. Co., 455 A.2d 361, 366 (Del. Super. Ct. 1982)); Barker v. Nationwide Ins. Co., No. 86C-JA-30, 1987 Del. Super. LEXIS 1280, at *12-13 (Aug. 11, 1987) (defining "necessary" medical expenses as those that are medically "indispensable" and not just for comfort or convenience).

litigation–payment of future physical therapy expenses.[5]  To the
extent that Plaintiff is still seeking coverage for previously
incurred medical expenses, Plaintiff has provided no evidence of
any past expenses that she believes Defendant should cover (e.g.,
bills that remain unpaid).  Indeed, Defendant's counsel
specifically asked Plaintiff at her deposition to identify the
bills for which she was seeking coverage, yet Plaintiff responded
that she did not know.  (Pl.'s Dep. 56:16-58:9, Def.'s Mot. Ex.
7.)  Moreover, Plaintiff conceded that Defendant paid all of her
medical bills until August 2008.  (Id. at 73:1-18.)  Plaintiff
thus has not shown that there is a genuine dispute of material
fact over coverage for past medical treatment.

Plaintiff nonetheless asserts that, at trial, she would
"introduce the testimony of Frederick A. Reichle, MD," who would
"testify that [Plaintiff] would benefit from further physical
therapy."  (Pl.'s Resp. 2-3.)  According to Plaintiff's brief,
"[Plaintiff] herself [would] testify that she stopped therapy as

---

[5] The amended complaint alleged that, "[n]otwithstanding the defendant's duty to pay and/or reimburse, said defendant failed to properly and promptly respond to plaintiff's medical claim and has failed to pay other first party medical benefits, all of which are a breach of defendant's duty, obligation, and/or agreement with the plaintiff."  (Doc. No. 8, ¶ 18.)  It further alleged that "[s]ome of the medical expenses which remain unpaid, include but are not limited to the following: prescription medication bills, bills for diagnostic testing, bills for physical therapy and bills from treating physicians."  (Id. ¶ 23.)  Plaintiff thus "demand[ed] . . . payment and/or reimbursement of all future and past medical and diagnostic expenses and prescription bills incurred as a result of the aforementioned accident."  (Id. ¶ 24.)

8

a result of Hartford cutting off her benefits. She [would] further testify that she would avail herself of future physical therapy, most particularly, aquatic therapy, to ameliorate her discomfort and her symptoms." (Id. at 3.)

The proposed testimony of Plaintiff herself cannot be considered by this Court at the summary judgment stage, however, because it is only an assertion in counsel's brief; there is no evidence in the record (e.g., a sworn affidavit) to support this assertion. In any event, Plaintiff's testimony would not establish that such therapy is medically necessary or that the cost would be reasonable. Expert testimony would be required. See, e.g., Dennis v. State Farm Mut. Auto. Ins. Co., No. 06C-06-262, 2008 Del. Super. LEXIS 448, at *8, 12 (Feb. 29, 2008) (holding that "[t]he evidence [the plaintiff] produced at trial–medical records, billing summary, [the plaintiff's] testimony [but no expert testimony]–" was insufficient to prove medical necessity).

The only evidence that Plaintiff does submit–the report of Dr. Reichle–contradicts the contention in Plaintiff's brief that further physical therapy would be beneficial: the report specifically states that "[p]hysical therapy was ineffective" and confirms Defendant's position that "[r]ecovery is quite unlikely because of the duration and persistence of her symptoms and the

9

documented lack of response to appropriate therapies over an extended period." (Pl.'s Resp. Ex. A.)[6]

Thus, Plaintiff has not shown that there is a genuine dispute of material fact over coverage for future medical treatment, and Defendant is entitled to summary judgment on the medical expense claim. Cf. Dennis, 2008 Del. Super. LEXIS 448, at *12-13 (granting the insurer's motion for judgment as a matter of law, because the plaintiff could not prove that her medical expenses were necessary by relying on "unexplained bills, especially after they were questioned for specific reasons by an expert").

### 2. Wage loss claim

Plaintiff's amended complaint alleged that she "was unable to work for an extended period of time in the past, and . . . will be unable to work for an extended period of time in the future for which she is owed wage loss benefits." (Doc. No. 8, ¶ 25.) To recover wage loss benefits under the policy, however, Plaintiff was required to "[c]ooperate with [Defendant] in the investigation . . . of any claim." (Def.'s Mot. Ex. 1, at 25.) Though Plaintiff filed a claim contending that she was unable to work from March 28 to April 25, 2008, she ignored Defendant's

---

[6] Defendant notes that the report was produced after the discovery deadline; Plaintiff does not deny this or otherwise address the issue.

request for a doctor's note to substantiate her claim that she was medically unable to work during this time frame. Still waiting for Plaintiff's supporting documentation, Defendant did not pay the claim.[7]

Having provided no evidence to show that she was unable to work from March 28 to April 25, 2008, let alone any evidence that she provided Defendant with such proof before filing suit, Plaintiff has not shown that there is a genuine dispute of material fact over coverage for any wage losses, and Defendant is entitled to summary judgment on the wage loss claim. See Ramsey v. State Farm Mut. Ins. Co., 869 A.2d 327, 327 (Del. 2005) (affirming summary judgment for the insurer because the plaintiff "had to establish that her lost wages were unavoidable" and she "offered no evidence on that point"); cf. Baker v. State Farm Mut. Auto. Ins. Co., No. 91C-08-001, 1993 Del. Super. LEXIS 221, at *2, 8-9 (June 30, 1993) (granting summary judgment to an insurer that "refused payment where Plaintiff failed to substantiate her request for reimbursement").[8]

---

[7] Plaintiff provides no evidence that Defendant ever denied the claim, and Defendant asserts that it remained open to processing the claim, even during the pendency of this suit, so long as Plaintiff provided the necessary documentation. (Def.'s Br. 11 & n.4.)

[8] While this lack of documentation is fatal to Plaintiff's claim for wages during the March 28 to April 25, 2008, time frame, Plaintiff's brief attaches the opinion of a "vocational expert" who states that Plaintiff is "unemployable in the national labor market" and suggests that Plaintiff should also be entitled to proceed to trial on a claim for "lifetime wage loss of $2,449,482.00." (Pl.'s Resp. 4 & Ex. B.) There is certainly no evidence that

**B. Bad faith**

Count II of Plaintiff's amended complaint alleges "bad faith" in the handling of Plaintiff's claims. (Doc. No. 8, at 11.)

"[A] cause of action for the bad faith delay, or the nonpayment, of an insured's claim in a first-party insured-insurer relationship is cognizable under Delaware law as a breach of contractual obligations." Tackett v. State Farm Fire & Cas. Ins. Co., 653 A.2d 254, 256 (Del. 1995). "[I]n order to establish 'bad-faith' the plaintiff must show that the insurer's refusal to honor its contractual obligation was clearly without any reasonable justification." Casson, 455 A.2d at 369; accord Tackett, 653 A.2d at 264. "The ultimate question is whether at the time the insurer denied liability, there existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability." Casson, 455 A.2d at 369; see also Tackett, 653 A.2d at 266 ("Mere delay is not evidence of bad faith, provided that a reasonable justification exists for refusing to make payment upon submission of proof of loss."). At the summary judgment stage, "the question of bad faith refusal to pay should not be submitted

---

Plaintiff ever submitted a claim for lifetime losses to Defendant, let alone that such a claim would be covered under the policy.

to the jury unless it appears that the insurer did not have reasonable grounds for relying upon its defense to liability." Casson, 455 A.2d at 369.

1. Medical expenses

"[T]he finding of a reasonable justification for [an insurer]'s action in terminating plaintiff's benefits precludes, as a matter of law, a finding of bad faith . . . ." Casson, 455 A.2d at 370. Defendant is thus entitled to summary judgment regarding Plaintiff's medical expenses, as its denial of further coverage was justifiably based on expert opinions that further treatment was unnecessary. See Albanese v. Allstate Ins. Co., No. 97C-08-191, 1998 Del. Super. LEXIS 274, at *8 (July 7, 1998) (granting summary judgment to the insurer because the conclusion of one of the reviewing physicians, though "diametrically opposed to the findings of Plaintiff's experts, . . . presented a bona fide dispute as to whether Plaintiff's need for carpal tunnel surgery was related to the accident").

2. Wage loss claim

The Delaware Superior Court has recognized that, "where at the time of denial of benefits there was a bona fide dispute as to whether all contractual conditions had been complied with, Defendant had reasonable grounds for relying on its defense to liability." Baker, 1993 Del. Super. LEXIS 221, at *8. Defendant

13

is thus entitled to summary judgment regarding Plaintiff's wage loss claim, because Plaintiff never submitted documentation to support her contention that she was medically unable to work, and Defendant therefore had more than reasonable grounds to believe that Plaintiff had not complied with the contractual conditions of the policy. See id. at *6-7 (granting summary judgment to the insurer because "the policy permit[ted] the insurer to seek documentation to justify the recovery of proceeds by the insured, and since Plaintiff in this instance failed to address these requests, Defendant was reasonable in its belief that it had a proper defense to liability" (footnote omitted)).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.